MINUTE ENTRY
WILKINSON, M. J.
MAY 13, 2015

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CHARLES MARQUETTE ET AL.                              CIVIL ACTION

VERSUS                                                NO. 14-2311

SOUTHERN FIDELITY INSURANCE CO.                       SECTION "A" (2)

### HEARING AND ORDER ON MOTIONS

APPEARANCES:  Joseph LaHatte, representing plaintiffs; Donald Latuso, Jr., representing defendant

MOTIONS:   (1)   Defendant's Motion for Protective Order to Quash or Limit the Scope of 30(b)(6) Deposition of So. Fidelity Insurance Co., Record Doc. No. 33
           (2)   Defendant's Motion to Quash Deposition and Subpoena of Anthony Hargrove, Record Doc. No. 41

O R D E R E D:

 (1) : GRANTED IN PART AND DENIED IN PART.  Fed. R. Civ. P. 26(b) governs the scope of discovery. As a threshold matter, discovery extends to "matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). It may be expanded to "any matter relevant to the subject matter involved in the action," but only upon court order for good cause shown. Id. (emphasis added). However, even if the requested discovery is relevant within these standards, otherwise permissible discovery is subject to the restrictions contained in Fed. R. Civ. P. 26(b)(2)(C).
       Applying these standards, I find that many of the topics included as matters for examination in the subject Rule 30(b)(6) notice, Record Doc. No. 33-8, are so broadly worded that they extend beyond what is relevant to the claims or defenses in this case. This

MJSTAR:  0 : 27

over breadth includes but is not limited to the inclusion in the matters of examination of all Louisiana fire insurance claims – not just the claim at issue in this case – and the absence of any temporal limitation of the matters for examination to a time period that might be relevant to the parties' claims or defenses. While the broadly worded topics included in plaintiffs' notice may be relevant to the subject matter involved in the action, plaintiffs have failed to establish "good cause," as required by Rule 26(b)(1), to expand the scope of discovery to subject matter in this garden variety insurance coverage and adjusting case. On the other hand, most of the matters for examination included in the subject notice may easily be modified to restrict the deposition to its proper scope.

Accordingly, the motion is denied insofar as it seeks "a protective order . . . to quash or forbid inquiry into the proposed topics" as a whole. Record Doc. No. 33 at p. 1. The motion is granted insofar as it seeks to forbid inquiry into the matters described in ¶'s 10 and 15-17. I find that these topics concern information that is irrelevant and/or not reasonably calculated to lead to the discovery of admissible evidence and/or unreasonably cumulative or duplicative of other topics as to which examination will be permitted. As to "reserves" specifically, although courts have reached differing outcomes concerning the discovery of insurance reserves information, I agree with the better, more exhaustively reasoned reported decisions finding that reserves information is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence in cases of this sort. See Signature Dev. Cos. v. Royal Ins. Co., 230 F.3d 1215, 1224 (10th Cir. 2000) ("Royal's reserve calculation is merely an amount it set aside to cover potential future liabilities. [A policy reserve is defined] as '[a]n insurance company's reserve that represents the difference between net premiums and expected claims for a given year'") (quoting Black's Law Dictionary 1309 (7th ed. 1999)); J.C. Assocs. v. Fidelity & Guar. Ins. Co., No. 01-2437, 2003 WL 1889015, at *1 (D.D.C. 2003) ("reserve figure is not an admission unless it is in fact an assessment of liability rather than the product of state law or regulation or driven by tax or other financial considerations"); Fidelity & Deposit Co. v. McCulloch, 168 F.R.D. 516, 525 (E.D. Pa. 1996) (citation omitted) ("[S]etting aside reserves does not amount to an admission of liability. . . . We fail to see how compelling production of reserve information would bring [the insured] any closer to proving bad faith on Fidelity's part."); Fed. Realty Inv. Trust v. Pac. Ins. Co., 760 F. Supp. 533, 540 (D. Md. 1991) ("reserve decisions are mere guesses at the outcome of litigation based on conservative accounting principles"); In re Couch, 80 B.R. 512, 517 (S.D. Cal. 1987) ("The legislature and Insurance Commissioner establish reserve policy. For this reason alone, a reserve cannot accurately or fairly be equated with an admission of liability or the value of any particular claim. Further, loss reserves must reflect all potential claim expenses."); Indep. Petrochem. Corp. v. Aetna Cas. & Sur. Co., 117 F.R.D. 283, 288 (D.D.C. 1986) ("[A] reserve essentially reflects an assessment of the value of a claim taking into consideration the likelihood of an adverse judgment and . . . such estimates of potential liability do not

normally entail an evaluation of coverage based upon a thorough factual and legal consideration when routinely made as a claim analysis."); Union Carbide Corp. v. Travelers Indem. Co., 61 F.R.D. 411, 413 (W.D. Pa. 1973) ("the contingent and uncertain nature of reserves could render questions about reserves tantamount to hypothetical questions")); see also Shelter Mut. Ins. Co. v. Culbertson's Ltd., No. 97-1609, 1999 WL 539520, at *4 (E.D. La. July 23, 1999) (citing Molony v. USAA Prop. & Cas. Ins. Co., 708 So. 2d 1220, 1226 (La. App. 4th Cir. 1998)) ("[T]his Court does not equate 'reserve' with 'undisputed amount.' To that end, the Court finds that it would be overly prejudicial and confusing to a jury with respect to a bad faith claim to allow testimony concerning the amounts reserved.").

The motion is granted in part and denied in part as to the remaining topics. The claims and defenses in this case relate to the fire giving rise to the subject insurance claim and the resulting adjusting and payment disputes. The fire occurred on April 1, 2014. Therefore the notice is hereby modified to restrict examination to a reasonable relevant time period of April 1, 2012 (two years before the subject fire) through the present and to permit examination relevant only to the April 1, 2014, fire claim at issue in this case, as modified by the court and set out in Attachment "A" to this order.

Defendant's concerns about the possibility that the examination may seek "privileged and/or confidential business information," Record Doc. No. 50 at pp. 8-10, are easily addressed by the application of Fed. R. Civ. P. 30(c)(2) and the imposition of an appropriate protective order. Accordingly, **IT IS ORDERED** that all privilege objections are specifically preserved and may be asserted pursuant to Rule 30(c)(2). **IT IS FURTHER ORDERED** that any testimony as to which defendant asserts a claim of confidential or proprietary commercial or trade secret information must be provided, but subject to the following protective order:

Defendant may designate testimony about proprietary commercial or trade secret information provided in accordance with this order as confidential. All such designated testimony must be marked and kept confidential and used only for purposes of this litigation and must not be disclosed to any one except parties to this litigation, the parties' counsel of record and experts retained in connection with this litigation. All persons to whom such information is disclosed must sign an affidavit that must be filed into the record, agreeing to the terms of the protective order and submitting to the jurisdiction of this court for enforcement of those terms. If any party seeks to add other terms to this protective order, counsel must confer immediately and submit by motion any proposed protective order.

The motion is denied insofar as it seeks an award of attorneys fees and costs incurred in connection with this motion. The motion has been granted in part and denied in part. Under these circumstances, I find that a reasonable apportionment of the expenses incurred

in connection with this motion is that both sides should bear their own. Fed. R. Civ. P. 37(a)(5)(B), made applicable to this motion by Fed. R. Civ. P. 26(c)(3).

**IT IS ORDERED** that the Rule 30(b)(6) deposition of defendant, Southern Fidelity Insurance Company, must commence on **May 18, 2015 at 9:30 a.m.** at the office of ASR Court Reporters, 2894-A Remington Green Lane, Tallahassee, Florida.

 (2) : GRANTED, subject to the order contained herein. The subpoena was improperly served and is quashed for that reason. Fed. R. Civ. P. 45(b)(1); Wells v. State Farm Fire and Casualty Co., 2013 WL 3187279 *3 (E.D. La. June 20, 2013). However, the witness, Anthony Hargrove, is a direct employee of defendant. Record Doc. No. 41-3 at ¶ 5. He is a "senior claims examiner" who worked on the insurance claim that is the subject of this case, and defendant has listed him on its trial witness list. Record Doc. No. 39 at p. 1, ¶ 1(a). He should be deposed, and defendant – as his employer – is able to produce him for his deposition without need for a subpoena. Accordingly,

**IT IS ORDERED** that defendant Southern Fidelity Insurance Company must produce its employee, Anthony Hargrove, to be deposed by plaintiffs' counsel on **May 18, 2015, commencing at 2:30 p.m.** at the office of ASR Court Reporters, 2894-A Remington Green Lane, Tallahassee, Florida, without the necessity of a subpoena. This is a court-ordered deposition. Failure of defendant to produce this witness, its direct employee, for his deposition is subject to Fed. R. Civ. P. 37(b)(2).

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

<u>Marquette v. So. Fidelity Ins. Co.</u>
C.A. 14-2311 "A"(2)

Attachment "A"
<u>to Order Dated May 13, 2015</u>
Court-Modified Permissible Matters for Examination for
Rule 30(b)(6) Deposition of Defendant

The court has permitted examination concerning the following matters, limited to the time period 2012 through the present:

1. Defendant's policy, practice, and procedure of creating its claim file for the April 1, 2014, fire claim at issue in this case, including documents regarding and/or related to the processing, payment and/or denial of the subject claim.

2. Defendant's policy, practice, and procedure of developing the claims handling manuals, guidelines, or any other documents used to instruct personnel on the claims handling and/or adjustment process used for the April 1, 2014, fire claim at issue in this case, including additions, deletions and other revisions from previous versions of any such material.

3. Defendant's policy, practice, and procedure of employing claims representatives and/or adjusters who worked on the April 1, 2014, fire claim at issue in this case, including, but not limited to, employment standards and qualifications and the policy, practice, and procedure for promotion of such individuals within Defendant corporation.

4. Defendant's policy, practice, and procedure of training the claims representatives, adjusters, and all other personnel involved in the claims processing and/or adjustment operation employed for the April 1, 2014, fire claim at issue in this case.

5. Defendant's policy, practice, and procedure of adjusting and processing the April 1, 2014, fire claim at issue in this case.

6. Defendant's policy, practice, and procedure of initiating and using adjuster summaries, engineering reports, and any and all other investigative reports, as well as the drafts and notes of such, in processing the April 1, 2014, fire claim at issue in this case.

7. Defendant's document retention policy applicable to the April 1, 2014, fire claim at issue in this case.

8. Defendant's complete and total chain of command of claims adjusting and processing for the April 1, 2014, fire claim at issue in this case.

9. Any and all engineering reports commissioned by Defendant for the April 1, 2014, fire claim at issue in this case which were distributed to management.

10. Method by which Defendant calculated depreciation for personal property and real property for the April 1, 2014, fire claim at issue in this case.

11. Method by which Defendant valued damage to personal property and real property for the April 1, 2014, fire claim at issue in this case.

12. Use of pricelists contained in computerized estimating software for the April 1, 2014, fire claim at issue in this case, including, but not limited to: (a) who created the pricelists; (b) what the pricelists are based upon; (c) any supporting documentation for the price lists; (d) any evaluation of the price for labor and construction materials; (e) method of training adjusters and claims representatives who worked on the April 1, 2014, fire claim at issue in this case on the use of estimating software; (f) documents instructing adjusters and claims representatives who worked on the April 1, 2014, fire claim at issue in this case on the use of the estimating software; (g) how the pricelists used for the April 1, 2014, fire claim at issue in this case are maintained within Defendant; (h) any and all contracts with the company which created and/or maintains the pricelists used for the April 1, 2014, fire claim at issue in this case; (i) any communications between Defendant and the company which supplies, created, and/or maintains the pricelists concerning the April 1, 2014, fire claim at issue in this case; (j) the reasons for using the pricelists for the April 1, 2014, fire claim at issue in this case; (k) any communication within Defendant company concerning the need to deviate in any way from the pricelists in the computer estimating software concerning the April 1, 2014, fire claim at issue in this case; (l) whether any adjuster or claims representative who worked on the April 1, 2014, fire claim at issue in this case altered the pricelists in the computer estimating software for use in connection with the April 1, 2014, fire claim at issue in this case; and (m) the existence of any "pricing department" in which Defendant assessed pricelists used for the April 1, 2014, fire claim at issue in this case.

13. All materials provided to adjusters and/or claims representatives concerning the instruction, decision, and/or training to determine the scope of damage for the April 1, 2014, fire claim at issue in this case.

14. The policy, practice, and procedure for the use of emails in the course of adjusting the April 1, 2014, fire claim at issue in this case.

15. The policy, practice, and procedure for evaluating any contractor's estimate of damages for use in connection with the April 1, 2014, fire claim at issue in this case.

16. The policy, practice, and procedure for determining the availability and calculation of overhead and profit for the April 1, 2014, fire claim at issue in this case.

17. The policy, practice, and procedure for determining the availability and calculation for a contingency percentage, if any, for the April 1, 2014, fire claim at issue in this case.

18. The policy, practice, and procedure for approving or denying any request by plaintiffs for the appraisal process contained in the SFIC policy of insurance for the April 1, 2014, fire claim at issue in this case.

19. The policy, practice, and procedure for what constitutes a proof of loss for the April 1, 2014, fire claim at issue in this case.

20. The policy, practice, and procedure for the timeliness of evaluating plaintiffs' proof of loss for the April 1, 2014, fire claim at issue in this case.

21. The policy, practice, and procedure for the timeliness of evaluating plaintiffs' April 1, 2014, fire claim at issue in this case.

22. The policy, practice, and procedure for informing adjusters and/or claims representatives who worked on the April 1, 2014, fire claim at issue in this case of Louisiana law concerning such claim.

23. The policy, practice, and procedure for initiating loss adjustment for the April 1, 2014, fire claim at issue in this case.

24. All documents produced by Defendant in the discovery of this matter.

25. The policy, practice, and procedure for paying Additional Living Expenses ("ALE") for the April 1, 2014, fire claim at issue in this case.

26. The policy, practice, and procedure for paying the personal property claim for the April 1, 2014, fire claim at issue in this case.

27. The kinds of documents required by defendant in connection with the personal property claim for the April 1, 2014, fire claim at issue in this case.

28. The spheres of payment and/or settlement authority within SFIC for the April 1, 2014, fire claim at issue in this case.

29. Any and all decisions made on the insurance file for the insured petitioner in this litigation.