```
              UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF LOUISIANA

CHARLES MARQUETTE, ET AL.               CIVIL ACTION


VERSUS                                  NO: 14-2311


SOUTHERN FIDELITY INSURANCE             SECTION: "A" (2)
COMPANY
```

**ORDER AND REASONS**

Before the Court is a **Motion for Partial Summary Judgment (Rec. Doc. 56)** filed by defendant Southern Fidelity Insurance Company. Plaintiffs Charles Marquette and Angela Marquette oppose the motion. The motion, noticed for submission on July 1, 2015, is before the Court on the briefs without oral argument.[1]

**I. Background**

Plaintiffs allege that a fire caused substantial damage to their Belle Chasse residence on April 1, 2014. Defendant had previously issued an insurance policy to cover this residence and related property. Plaintiffs claim that they promptly reported the incident to Defendant. They further claim that they have demanded payment several times via telephone and letters. The policy limits (where relevant) are as follows: 1.) Coverage A, Dwelling – $266,600.00 ; 2.) Coverage C, Contents - $57,900.00; 3.) Coverage D, Additional Living Expenses (covered where

---

[1] Defendant requested oral argument, but argument would not be helpful in light of the issues presented.

1

necessary).

Defendant acknowledges that Plaintiffs reported the loss on April 1, 2014. That same day Defendant contacted Fountain Group Adjusters to conduct an inspection of the property (which was undertaken on April 2, 2015) and Enviro-Clean Services, Inc. to explore fire mitigation options for the property. On April 2, 2015, Defendant issued a check towards Contents Coverage for $2000.00. On April 9, 2015, at Defendant's direction, U.S. Forensic Engineers examined the property to determine the cause of fire. The adjusters produced a report on April 30, 2014, estimating $118,876.20 in damages to the dwelling (or $95,122.85 after reducing for depreciation and the deductible) and $3348.48 (or $1673.25 after reducing for depreciation) in damages to its contents. Defendant issued checks in these amounts on May 8, 2014. On May 7, 2014, Enviro-Clean submitted an estimate to Defendant of $40,748.82 in fire mitigation costs. Defendant issued another check in this amount six days later.

On August 14, 2015, Plaintiffs demanded coverage for additional living expenses in the amount of $23,800.00 ($3400 per month for six months with a one month value deposit). Defendant issued a check for $6800.00 on August 28, 2014. On August 27, 2014, Plaintiffs submitted a demand for contents coverage with a contents list attached. On August 29, 2014, Defendant issued a check for $55,900.00. Combined with the prior payments, this

fulfilled the policy limit for that provision.

Plaintiffs allege that the repairs to their home will cost $266,600.00 and that their interim living arrangements will cost $23,800.00. They claim that to date Defendant has paid $96,122.85 toward the repair costs, $6800.00 toward the interim living costs, and has refused to authorize an appraisal – all in derogation of policy requirements.

La. R.S. §§ 22:1892 and 22:1973 provide penalties for scenarios in which an insurer fails to, among other things, tender payments under the relevant statutory time periods in such a way that evidences that the insurer has breached its duty of good faith and fair dealing. The courts have summarized the element for a claim under these statutes (which differ as to the applicable time periods) that a plaintiff must establish as follows: 1) the insurer received a satisfactory proof of loss; 2) that the insurer failed to pay the claim within the applicable statutory period; and 3) that the insurer's failure to pay was arbitrary and capricious. *Grilleta v. Lexington Ins. Co.*, 558 F.3d 359, 368 (5th Cir. 2009). The terms "arbitrary and capricious" are the equivalent of conduct that is "unjustified, without reasonable or probable cause or excuse." *La. Bag Co., Inc. v. Audubon Indem. Co.*, 999 So.2d 1104, 1114 (La. 2008). As an additional statement on the application of this definition, the Louisiana Supreme Court has stated that "'there can be *no*

*good reason*' – or no probable cause – for withholding an undisputed amount." *Id.* at 1114 (citations omitted)(emphasis in original).

Plaintiffs offer several different types of conduct, policies, or payments which they argue evidence Defendant's bad faith.  Defendant responds that several of the offered bases are red herrings as they are irrelevant to such an analysis, that Plaintiffs' own conduct caused the delays in payment and processing the claims, and that any "bad faith" conduct cannot be predicated on a payment dispute.

Defendant is correct that violations of La. R.S. §§ 22:1892 and 22:1973 cannot rely on "an insurer's payment of less than full value of an insured's loss" where there is a good faith dispute or where "an insured fails to provide his insurer with information required to process his claim. . . ." *Dickerson v. Lexington Ins. Co.*, 556 F.3d 290, 299 (5th Cir. 2009).  On August 14, 2014, Plaintiffs demanded payment for additional living expenses under Coverage D of the policy, which according to record document evidence, Defendant acknowledged would be necessary for Plaintiffs and their children.  Plaintiffs attached the temporary housing provider's contract, signed on August 5, 2015 by the provider and Plaintiffs.  This contract purports to bind Plaintiffs to its terms, including full payment in advance, at which time the commencement period of the six month temporary

4

housing arrangement would begin.  The contract includes a cancellation penalty if the signees withdraw prior to commencement.  The terms of the contract were $3400 per month for six months for a fully furnished four to five bedroom house.  This equates to a payment of $23,800 necessary to perform under the contract (including the deposit at the value of one month of rent).

Defendant responds that it did not pay the full amount as there was not an actual lease provided, only this contract.  Defendant further states that the house listing attached to the agreement notes that it will not be available until the end of August.  Defendant issued a check for $6800 after receiving Plaintiffs' demand, but it has provided no further funds on this claim.

A determination of whether Defendant's actions constitute arbitrary and capricious conduct requires weighing whether this amount can properly be considered disputed, which in turn requires a determination as to whether there was a reasonable basis for the decision and if Defendant acted in good faith reliance on that basis based on "the facts known to the insurer at the time of its action."[2]  *La. Bag Co., Inc.*, 999 So.2d at 1114.  Given the arguments of and evidence submitted by both

---

[2] Of course to find the amount disputed simply because of an insurer's refusal to pay would eviscerate the protections provided by La. R.S. §§ 22:1892 and 22:1973.

parties, the Court finds that such a determination will be better made by the finder of fact after weighing the submitted evidence. The Court finds it unnecessary at this time to separately analyze the additional arguments. If a violation is found even as pertains to payment under one provision of the policy, the penalty is still based on the policy as a whole. *Grilleta*, 558 F.3d at 369-71. Additionally, arguments based on Plaintiffs' conduct will be able to be fully considered after testimony at trial.

In closing, the Court recognizes that a violation will not be found merely where "the insurer denies coverage and a jury disagrees." *Kodrin v. State Farm Fire and Cas. Co.*, 314 F. Appx. 671, 680 (5th Cir. 2009). This will be best addressed through appropriate jury instructions at trial.

Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that the **Motion for Partial Summary Judgment (Rec. Doc. 56)** filed by defendant Southern Fidelity Insurance Company is **DENIED**.

August 21, 2015

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE