UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CHARLES MARQUETTE ET AL.                    CIVIL ACTION

VERSUS                                       NO. 14-2311

SOUTHERN FIDELITY INS. CO.                   SECTION "A" (2)

### ORDER AND REASONS ON MOTIONS

This is a homeowner's insurance claim arising from a house fire. Plaintiffs seek to recover payments allegedly due to them under an insurance policy issued by defendant, their insurer. Defendant's Motion for Leave to File Second Supplemental and Amending Answer and Third Party Complaint is pending before me. Record Doc. No. 98. The motion seeks in part to add three new affirmative defenses to defendant's answer, all essentially asserting fraud by plaintiffs and two non-parties in plaintiffs' submissions to defendant in support of their claim for additional living expenses ("ALE") under the policy. The alleged fraud resulted in a payment by defendant to plaintiffs in the amount of $6,800.00. Record Doc. No. 98-3 at pp. 17-18 (30th, 31st and 32nd Affirmative Defenses in proposed amended answer). Defendant also seeks leave to file a third-party complaint naming two new parties and asserting five new causes of action, including two claims under the complex federal Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1964, one asserting a substantive civil RICO claim and the other alleging a RICO conspiracy among the new parties and plaintiffs. Id. at pp. 19-31.

The deadline for amending pleadings and adding new parties lapsed seven months ago. Record Doc. No. 18. Although the presiding district judge recently continued both

the final pretrial conference and the trial date, his order doing so noted that all other deadlines "have passed, and no extensions will be permitted." Record Doc. No. 110 at p. 3.

Having considered the record, the applicable law and the written submissions of counsel, IT IS ORDERED that the motion is DENIED for the following reasons:

The policy of the Federal Rules of Civil Procedure is liberal in favor of permitting amendment of pleadings, and Rule 15(a) evinces a bias in favor of granting leave to amend. Unless there is a substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial. Stripling v. Jordan Prod. Co., 234 F.3d 863, 872 (5th Cir. 2000) (citing Foman v. Davis, 371 U.S. 178, 182 (1962); Leffall v. Dallas Indep. Sch. Dist., 28 F.3d 521, 524 (5th Cir. 1994); Martin's Herend Imports, Inc. v. Diamond & Gem Trading U.S. Am. Co., 195 F.3d 765, 770 (5th Cir. 1999); Dussouy v. Gulf Coast Inv. Corp., 660 F.2d 594, 597-98 (5th Cir. 1981)). Thus, "[t]he court should freely give leave when justice so requires," Fed. R. Civ. P. 15(a)(2), but such leave "is by no means automatic." Wimm v. Jack Eckerd Corp., 3 F.3d 137, 139 (5th Cir. 1993) (quotation omitted). Relevant factors to consider include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment." Id.

However, where–as here–the court has entered a scheduling order setting a deadline for the amendment of pleadings which lapsed seven months ago, Record Doc. No. 18, the schedule "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4) (emphasis added). "Rule 16(b) governs amendment of pleadings after a

2

scheduling order deadline has expired.  Only upon the movant's demonstration of good cause to modify the scheduling order will the more liberal standard of Rule 15(a) apply to the district court's decision to grant or deny leave." S&W Enters., L.L.C. v. SouthTrust Bank of Ala., NA, 315 F.3d 533, 536 (5th Cir. 2003).  "In determining good cause, we consider four factors: '(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice.'" Sw. Bell Tel. Co. v. City of El Paso, 346 F.3d 541, 546 (5th Cir. 2003) (citing Fed. R. Civ. P. 16(b)) (quoting S & W Enters., 315 F.3d at 535); accord Fahim v. Marriott Hotel Servs., Inc., 551 F.3d 344, 348 (5th Cir. 2008); Nunez v. U.S. Postal Serv., 298 F. App'x 316, 319 (5th Cir. 2008); In re Int'l Marine, LLC, No. 07-6424, 2009 WL 498372, at *1-2 (E.D. La. Feb. 26, 2009) (Fallon, J.).

In addition, motions for leave to file third-party complaints are governed by Fed. R. Civ. P. 14(a)(1), which provides:

> A defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it.  But the third-party plaintiff must, by motion, obtain the court's leave if it files the third-party complaint more than 14 days after serving its original answer.

"The district court is accorded 'wide discretion in determining whether to permit such third party procedure . . . .'" McDonald v. Union Carbide Corp., 734 F.2d 182, 183 (5th Cir. 1984) (quoting S. Ry. v. Fox, 339 F.2d 560, 563 (5th Cir. 1964)) (emphasis added).  In exercising this wide discretion, courts have considered a number of factors,

3

including effectuating the purposes of Rule 14 (avoiding circuity of action, eliminating duplication of suits on closely related matters and promoting judicial economy); whether other parties will be prejudiced; the unreasonableness of delay by the party asserting the third-party complaint; lack of substance to the third-party claim; and whether the action will become unduly complex or unduly delayed by permitting the impleader. 6 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 1443 at 351-67 (West 2010).

> There is little case law in the Fifth Circuit which examines what factors are properly considered when deciding whether to permit a third-party complaint. In Bell v. Bolivar County, an unpublished, per curiam opinion, the Fifth Circuit affirmed a district court's denial of leave to allow a third party complaint, because the filing would prejudice the plaintiff by delaying the case, and the defendant was not prejudiced because it could file its claims against the third party in a separate proceeding.

Am. Int'l Speciality Lines Ins. Co. v. 7-Eleven, Inc., No. 3:08-cv-807-M, 2009 WL 2448440, at *1 (N.D. Tex. Aug. 7, 2009) (Lynn, J.) (citing Bell v. Bolivar Cnty., 24 F.3d 240, 1994 WL 243455, at *2 (5th Cir. 1994)).

Considering the foregoing factors as a whole, I find that defendant's motion should be denied. Weighing the Rule 16 factors in this case militates against a finding of good cause. The explanation for the failure timely to amend is unpersuasive. Defendant asserts that it was not in possession of "pertinent information" necessary to assert these new claims until two depositions were taken on August 12, 2015. Record Doc. No. 98-1 at p. 11. Yet, the "additional living expenses" claim as to which the new fraud claims relate, including the name of the relocation company whom defendant now seeks to add as a third-party defendant, has been known in the case from its very beginning almost one year ago.

4

Record Doc. No. 1-1 (State Court Petition at ¶ 8).  Defendant provides no explanation why it delayed until now, with less than one week remaining before the already once previously extended and apparently not-to-be extended-again discovery deadline, to assert a claim that diligent investigation should have revealed months ago.

Significantly, the manner in which defendant puts forth its new assertions casts doubt on the credibility of defendant's proffered explanation for the late amendment. Defendant has cloaked what is in essence a simple state law fraud claim in the shroud of the "arsenal of draconian weapons" with the "almost inevitable stigmatizing effect" reeking of "litigation strategy" that complex and histrionic RICO claims regarding a mere $6,800.00 would insert into an otherwise garden-variety lawsuit like this one.  Carousel Foods of Am., Inc. v. Abrams & Co., 423 F. Supp. 2d 119, 123 (S.D.N.Y. 2006). Plaintiffs' opposition raises the specter of a complicating and time-consuming Rule 11 sanctions battle over defendant's new submission, Record Doc. No. 100 at pp. 6-8 and 14-19, in this case in which the presiding district judge has already found a need to delay the trial date in part because of "the ongoing plethora of motions filed by both parties."  Record Doc. No. 110 at p. 2.

> Civil RICO claims are extremely susceptible to the impropriety embraced within . . . Rule 11 . . . since, by their very nature, they invoke both economic and social concerns, including the possibility of complicated and expensive legal proceedings and the fear of being labeled a "racketeer."  As a result of the solicitude they instill in defendants, civil RICO claims serve as powerful strategic litigation devices and are, therefore, often improperly "bootstrapped" onto complaints to increase costs, delay proceedings, and coerce settlements.

5

Petra J. Rodrigues, "The Civil RICO Racket: Fighting Back with Federal Rule of Procedure 11," 64 St. John's L. Rev. 931, 947 (1990) (citing Chapman & Cole v. Itel Containers Int'l, 865 F.2d 676, 684-85 (5th Cir. 1989) "(RICO counterclaim used as part of defensive strategy to increase litigation costs in hopes of plaintiff's withdrawal)"); see also Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 506 (1985) (Marshall, J., dissenting) "(RICO wrongfully used for 'extortive purposes' resulting in perpetuation of 'evils that it was designed to combat'")).

As to importance, while allegations of fraud are certainly serious, their importance in this case is greatly lessened by the overblown pleading included in defendant's proposed new submission. The $6,800.00 amount at stake in the alleged fraud is small. The increased delay and expense in litigating defendant's new claims, especially its complicated and inflated RICO allegations, far outweigh this amount. In addition, it appears entirely unnecessary – and therefore unimportant – to add the fraud allegations as an affirmative defense, since defendant has effectively asserted the same defenses at least twice in its prolix original answer. See Record Doc. No. 5 (Answer at p. 16, 24th Affirmative Defense: "To the extent there is later determined to be an intentional act by any insured that caused or contributed to the loss, then there is no coverage for plaintiffs' claims," citing ¶ 8 of the policy; and 26th Affirmative Defense: "Should it be known that plaintiffs have made any material misrepresentations in connections with their claim for recovery for damages under the policy, [defendant] pleads such representations are in violation of the terms and

conditions of said policy, thereby voiding coverage and any obligations therein, pursuant to the terms and conditions of said policy, which are plead as if copied herein in extenso.").

The prejudice that would result to plaintiffs and the new parties whom defendant proposes to add at this late date would be severe. Less than one week remains before the discovery deadline, which has already been extended once. Record Doc. Nos. 18, 74. The district judge's order continuing the final pretrial conference and trial indicates that it will not be extended again. Record Doc. No. 110. The proposed new pleading would materially change the substantive nature of this case and add five causes of action that are complex in terms of proof and that have not previously been included in the parties' preparation of this case. Any discovery, motion filing or other deadline extensions to cure this prejudice would have to be lengthy and would further prejudice plaintiffs in their ability to obtain resolution of their claim. Defendant suffers minimal prejudice by denial of its motion. It remains able to defend itself by rebutting plaintiffs' ALE claim with the testimony it has recently obtained or using the evidence to support its 24th and 26th Affirmative Defenses, which have long been asserted in its previous answer. Defendant also remains free to pursue its $6,800.00 fraud claim, even through the overwrought causes of action involved in its proposed third-party complaint, as a separate action that would not delay and unduly convolute trial of the instant case.

Because "good cause" under Rule 16 has not been established, the more liberal Rule 15 standard does not apply and need not be addressed.

For many of the same reasons discussed above, evaluating the Rule 14 factors weighs heavily <u>against</u> the court exercising its wide discretion to permit the third-party complaint at this late date.  As an initial matter, plaintiff's claims against defendant include bad faith adjusting, an intentional kind of fault arising from defendant's statutory and contractual obligations to plaintiffs under Louisiana law.  Four of the five causes of action asserted by defendant in its proposed third-party complaint are not the type that give rise to the kind of indemnity or contribution claim that Rule 14 contemplates.  <u>See</u> <u>Snyder v. Asercion</u>, No. 13-4752, 2013 WL 6004052, at *4-5 (E.D. La. Nov. 13, 2013) (Berrigan, J.) (a defendant has no cause of action for indemnity against third-party defendants when defendant's own alleged liability is based on its own actual or active fault, both intentional and negligent); <u>Whitney Nat'l Bank v. Boylston</u>, No. 09-0059, 2011 WL 1898918, at *6 (W.D. La. May 17, 2011) (Doherty, J.).

While circuity of action might be avoided by adding these new parties and causes of action to this otherwise ordinary homeowners' insurance policy dispute so that all issues arising from the underlying transaction might be addressed at once, any resulting benefit to judicial economy is more than offset by the much greater harm to judicial economy that would be caused by the undue complication and delay resulting from the new pleading and addition of two new parties.  As noted in the Rule 16 discussion above, adding the two RICO claims and the Louisiana Unfair Trade Practices cause of action asserted by defendant would unduly complicate trial and/or other resolution of the underlying dispute by multiples and delay these proceedings interminably.  A simple case would be

8

transformed into a complex one, undoubtedly increasing motion practice and the time required for pretrial preparation and trial, thus undermining the interests of judicial economy. As noted above, plaintiffs have already raised in their opposition memorandum the distinct possibility that they will counter defendant's new allegations, if permitted to be asserted, with their own motion for Rule 11 sanctions. Record Doc. No. 100 at pp. 6-8 and 14-19. The defendant insurance company, with its resources far superior to the individual plaintiffs, might be able to bear, even benefit, from the kind of additional delay in resolution of this matter that its new pleading would cause, but plaintiffs would be severely prejudiced by and should not be subjected to it.

For all of the foregoing reasons, defendant's motion to amend its answer and to assert a third-party complaint is denied.

New Orleans, Louisiana, this ___26th___ day of August, 2015.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

**CLERK TO NOTIFY:**
**HON. JAY C. ZAINEY**